# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**AMBERLY MAY DETRAZ**                                                                              **PLAINTIFF**

**VS.**                                         **CIVIL ACTION NO. 2:07cv177-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                            **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of the claimant, Amberly May Detraz, for a period of disability, disability insurance benefits, and supplemental security income benefits. The court has considered the briefs of the parties, the applicable law, and the administrative record and finds as follows:

## I. FACTUAL AND PROCEDURAL HISTORY

The claimant filed an application for a period of disability and disability insurance benefits on February 12, 2003, alleging a disability onset date of April 8, 2002. The application was denied initially and upon reconsideration. In a hearing decision dated October 3, 2005, administrative law judge ("ALJ") Michael D. Shilling found the claimant was not disabled as defined in the Social Security Act. On May 26, 2006, the Appeals Council granted the claimant's request for review, and vacated the hearing decision and remanded the case to the ALJ for further development and a new decision. On February 23, 2007, after the new hearing, ALJ Shilling issued a second decision in which he found the claimant was not disabled. The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied the claimant's request for review on August 20, 2007. The ALJ's decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The claimant was born in 1980 and was twenty-six years of age at the time of the hearing decision on February 23, 2007. She testified that she dropped out of school the first six weeks of the tenth grade, but was always in regular classes. She never attempted to complete the requirements for a GED. She had previously worked as a fast food worker, cashier, pharmacy technician, and order puller. The claimant alleged she could no longer work because of high blood pressure, depression, shortness of breath, and an inability to comprehend what she read or heard. After considering the claimant's subjective testimony, the testimony of a vocational expert ("VE") and the objective medical evidence, the ALJ determined that the claimant had the residual functional capacity ("RFC") to lift or carry twenty pounds occasionally and ten pounds frequently; she could stand or walk for six hours of a normal eight-hour workday; she could sit for six hours of a normal eight-hour workday; and she could occasionally climb stairs, balance, stoop, crouch, kneel and crawl. The ALJ further determined she would be limited to jobs that required simple one, two or three step instructions or tasks; that did not demand attention to details or complicated instructions or job tasks; and that did not require close cooperation and interaction with coworkers and only occasional cooperation and interaction with the general public. She would be able to maintain attention and concentration for a minimum of two hours at a time. Also, she could adapt to changes in the work place at a basic level and accept supervision on a basic level. Lastly, she would be able to maintain acceptable levels of punctuality and attendance. After finding the claimant's RFC precluded the performance of her past work, the ALJ relied upon the testimony of the VE in concluding that based upon her age, education, work experience, and RFC, there were other jobs in the national economy that the plaintiff could perform.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step

sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, the claimant must prove he is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2000).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2000).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2000). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525, 416.925 (1998).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2000).

[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2000).

[8] *Muse*, 925 F.2d at 789.

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found . . . where there is a 'conspicuous absence of credible choices' . . . ." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS

In the present case, the claimant contends the ALJ committed reversible error, making essentially five arguments: (1) the ALJ understated the claimant's alleged medical problems; (2) the ALJ mischaracterized the jobs proffered by the vocational expert; (3) the ALJ failed to obey the Appeals Council's remand order; (4) the ALJ ignored the opinion of the claimant's treating

4

physician; (5) the ALJ failed to list all of the claimant's impairments in the hypothetical presented to the vocational expert; and (6) the ALJ ignored the testimony of other individuals. The court will address each of these arguments in turn.

### 1. Understated Medical Problems

The claimant first argues that the ALJ's decision is not supported by substantial evidence because he understated her medical problems. Specifically, the claimant argues that the ALJ's statement that she had only "occasional" headaches is at odds with testimony given by herself and her mother. The claimant focuses on the following statement in the ALJ's second decision: "Her blood pressure had proven difficult for her to control and this was her most significant problem and the root of all her problems. She had occasional headaches and this was a problem . . . ."

The claimant testified at both hearings that her headaches were constant, that there was no relief from them, and that she could practically do nothing because of them. Additionally, during the first hearing, the claimant's mother essentially testified that the claimant's "health" prevented her from holding past jobs and that the only thing she did at home was get dressed.

The court finds this assignment of error without merit. First, to the extent the claimant attempts to establish her headaches as a separate impairment, the attempt fails because the medical evidence and even the claimant's own testimony established that her headaches were secondary to and a symptom of her uncontrolled hypertension, and the ALJ gave sufficient consideration to this condition.

Next, the ALJ found the claimant's allegations of constant debilitating headaches simply not credible. In his first decision, the ALJ stated in pertinent part:

> The claimant testified she has constant headaches and leg pains. She indicated pain medication fails to alleviate her pain. When her pain is at its worst, she lays down. When the claimant experienced chest pain, she went to the hospital (Exhibit 8F). If the claimant's impairments caused pain to the extent she described, she would likely seek medical attention and request pain relief. This suggests the claimant's

5

impairments may not be as debilitating as alleged.

Further, in his second decision the ALJ noted that though the claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," her allegations regarding the "intensity, persistence and limiting effects of those symptoms were not entirely credible." The record supports this findings. For example, the claimant's report during a 2003 mental status evaluation that she did occasional light housework, watched television, and shopped with the aid of a wheelchair contradicted her testimony of constant debilitating headaches. *See Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995) (considering a plaintiff's daily activities as support for the ALJ's findings that the plaintiff was capable of performing past relevant work). Accordingly, the ALJ stated sufficient reasons for his credibility determination, and the court must defer to the ALJ's findings.

## 2. Mischaracterized Jobs

Next, the claimant suggests the ALJ's decision should be reversed because he misstated the jobs proffered by the VE. This assignment of error is also without merit. In response to the ALJ's second hypothetical question which actually contained the RFC found by the ALJ, the VE responded that an individual with the plaintiff's age, education, work history and proposed RFC could not perform the claimant's past work but could perform other work, including work as a laundry folder and produce sorter. However, in his decision, the ALJ misstated the VE's response and instead recited the VE's response to a third hypothetical.[9] Significantly, the third hypothetical did not contain the RFC found by the ALJ. Nevertheless, in response to the third hypothetical, the VE responded that the claimant could perform other jobs, including charge account clerk and nut sorter.

---

[9] The claimant also contends that the ALJ's third hypothetical was faulty because it did not include all of her impairments and disregarded the Appeal's Councils' remand order. However, these contentions are addressed in the following sections.

6

Though the claimant accurately points out that the ALJ's decision misstates the VE's testimony, this is not reversible error. It is clear from the record that the ALJ relied upon the VE's response to the second hypothetical question, and that response included the conclusion that the claimant could perform other work. Therefore, despite the ALJ's minor misstatement, his conclusion that the claimant could perform other work and was not disabled is consistent with the VE's testimony and, therefore, supported by substantial evidence. Therefore, because the plaintiff has failed to show any prejudice resulting from the ALJ's misstatement, this assignment of error is without merit. *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir.1996) ("We will not reverse the decision of the ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.").

### 3.  Appeals Council Remand Order

Here, the claimant contends the ALJ committed reversible error because he failed to abide by the Appeals Council's remand order. Specifically, the claimant argues that the ALJ failed to follow the Appeals Council's directive that hypothetical questions to the VE "reflect the specific capacity/limitations established by the record as a whole." The court finds this assignment of error requires little discussion because the claimant herself concedes that the ALJ's second hypothetical sufficiently contained all of her limitations. And, because the ALJ relied upon the VE's response to the second hypothetical, his decision is supported by substantial evidence. Nevertheless, to the extent the claimant contends the ALJ violated the remand order because additional hypotheticals did not contain all of her limitations, her argument fails because she cannot show any resulting prejudice.

### 4.  Treating Physician

The claimant contends that though the ALJ relied heavily upon her treating physician's opinion in the first decision, he ignored it in the second decision. The claimant further argues that

7

the Appeals Council did not consider an updated medical source statement submitted after the second hearing. In a medical source statement dated August 11, 2005, Dr. Forster Ruhl opined that the claimant could lift and carry 10 pounds frequently and up to 20 pounds on occasion. She had no limitations on her capacities for sitting, standing, or walking. She could occasionally climb, balance, stoop, crouch, kneel, and crawl. She had no limitations with respect to physical functions or environmental factors. The ALJ found initially as follows:

> The claimant has the following residual functional capacity: lift and carry 20 pounds occasionally, 10 pounds frequently; stand or walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; push or pull up to 20 pounds occasionally and 10 pounds frequently; occasionally climb, balance, stoop, crouch, kneel, and crawl. The claimant's mental residual functional capacity limits her to the following; only simple, one-, two-, or three-step tasks or instructions; maintain attention and concentration for at least 2 hour periods.

The ALJ noted that in formulating this RFC, he "relied primarily upon Dr. Forster Ruhl's Medical Source Statement, which is consistent with restrictions in the light exertional range of work." In his second decision, however, the ALJ did not mention the opinion of Dr. Ruhl. However, there is nothing to indicate that the ALJ changed the amount of weight he attributed to Dr. Ruhl's opinion. Indeed, the physical RFC found by the ALJ in his second decision is almost identical to his initial RFC finding. And, because the claimant has failed to show that she was prejudiced by the ALJ's failure to mention Dr. Ruhl's opinion, there is no ground for remand. *See Brock*, 84 F.3d at 729.

As regards the second medical source statement, the claimant obtained Dr. Ruhl's updated opinion on August 10, 2007, almost six months after the ALJ's second adverse decision but prior to the Appeals Council's decision denying her request for review. In this second medical source statement, Dr. Ruhl added a statement that the claimant had limitations in reaching secondary to "residual weakness" in the arms caused by two strokes and that medications "may impair" the claimant's ability to work. In denying the claimant's request for review, the Appeals Council expressly noted that it had considered this evidence yet found no reason to overturn the ALJ's

8

decision. The Fifth Circuit has held that under such circumstances, the Appeals Council is not required to give an explanation of the weight it assigns to the claimant's new evidence. *Higginbotham v. Barhnhart*, 405 F.3d 332, 335 n. 1 (5th Cir. 2005). Moreover, to the extent the Appeals Council did not consider the evidence, a contention the court doubts, the claimant has failed to allege let alone demonstrate how the result would have been different. Indeed, Dr. Ruhl's statement that the claimant suffers from "residual weakness" of the arms contradicts the claimant's own testimony during the second hearing that she had no lasting effects from "another" "light" stroke she suffered in March 2006. Moreover, Dr. Ruhl's statement regarding side effects from medications is neither supported by any allegation of the claimant nor his own medical notes. Therefore, the court finds that both the ALJ and the Appeals Council properly considered Dr. Ruhl's medical source statements.

### 5. Faulty Hypothetical

Here, the claimant contends that the ALJ erroneously relied upon the testimony of the VE because one hypothetical question did not contain all of her limitations. Specifically, the claimant contends the third hypothetical posed by the ALJ failed to incorporate "moderate limitations in the ability to interact appropriately with the general public." In the Fifth Circuit, hypothetical questions posed to the vocational expert are sufficient so long as they "incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question . . . ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Again, the claimant actually concedes that "the ALJ accurately posed a hypothetical under hypothetical number II." Therefore, because the ALJ relied upon the VE's response to the second hypothetical and not the third, no reversible error was committed.

### 6. Testimony Of Other Individuals

Lastly, the claimant argues the ALJ erred in not considering the testimony of her mother, Becky Newton, given during the first hearing. Specifically, the claimant points out that though the ALJ referenced her mother's statements in his first unfavorable decision, no such reference was made in the second unfavorable decision. Further, she contends the ALJ was required to make a credibility determination regarding Ms. Newton's statements. In support of this proposition, the claimant cites *Lafferty v. Astrue*, 559 F.Supp. 2d 993 (W.D. Mo. May 30, 2008). However, citing the Eighth Circuit's decision in *Young v. Apfel*, 221 F.3d 1065 (8th Cir. 2000), the *Lafferty* court actually pointed out that an ALJ's failure to analyze the credibility of third-party witnesses does not require remand when the ALJ "implicitly" evaluates the statements by evaluating inconsistencies between the claimant's statements and other evidence. *Lafferty*, 559 F.Supp. 2d at 1014. As shown below, this is exactly what the ALJ did in this case.

Ms. Newton essentially testified that at the age of sixteen the plaintiff only worked for about six months on her first fast food job because she had a problem with headaches. She also testified that the claimant had to take frequent breaks to rest and cool down on another job because of her hypertension. She witnessed the claimant cry for no reason. She also testified that the claimant lived with her, that her daily activities included only getting dressed, and that everything at home was done for her. In his first decision, the ALJ indicated only that he accepted Ms. Newton's testimony as supportive of the claimant's mental limitations.

First, beyond not mentioning the testimony, nothing in the ALJ's second decision indicates he changed his opinion regarding Ms. Newton's testimony. In his second decision, the ALJ made mental RFC findings consistent with Ms. Newton's testimony. Accordingly, the claimant cannot show that she was prejudiced in any way.

Second, the ALJ implicitly rejected Ms. Newton's testimony that the claimant was

essentially not able to do anything except get dressed because other evidence, including the claimant's own reports of daily activities, contradicted these statements. In the Fifth Circuit, it is within an ALJ's discretion to reject lay person testimony in the absence of supporting objective findings "because the observations of an individual, particularly a lay person, may be colored by sympathy for the affected relative or friend and influenced by that person's exaggeration of his limitation." *See Harrell v. Bowen*, 862 F.2d 471, 482 (5th Cir. 1998) (finding the ALJ acted within his discretion in rejecting statements of friends and relatives). Therefore, the court finds the ALJ's failure to discuss the testimony of the claimant's mother is not reversible error.

## IV. CONCLUSION

Based on the foregoing, I find that substantial evidence supports the Commissioner's decision that the claimant was not disabled for purposes of the subject application for social security benefits. Accordingly, the Commissioner's determination of no disability and the denial of benefits should be affirmed. A final judgment consistent with this opinion will be entered.

This 12th day of May, 2009.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE